IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRAVONTE LINDSEY, <br> #M44515, <br>     Plaintiff, <br> v. <br> ZACHARY MCCLANAHAN, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )     Case No. 3:24-cv-2290-RJD <br> ) <br> ) <br> ) <br> ) |

## ORDER

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on the parties' cross-motions regarding exhaustion of administrative remedies (Docs. 33 & 34).[2] For the reasons explained below, the motions are **GRANTED in part and DENIED in part**.

## Background

Plaintiff Travonte Lindsey, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brought this action for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. Doc. 10, p. 1. In the Complaint, Lindsey alleged that he was served oatmeal infested with bugs and that Defendants failed to provide him with medical care. *Id.*

---

[1] This matter has been assigned to the undersigned to conduct any and all proceedings through the parties' full consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 30.

[2] The Court previously granted Defendant Crane's motion to join Defendant McClanahan's motion for summary judgment. Doc. 41

Page **1** of **12**

Specifically, Lindsey alleged that on October 12, 2023, while housed in Menard's North 2 segregation unit, he received oatmeal for breakfast. Doc. 1, p. 7. After eating the oatmeal, Lindsey developed stomach pains and vomiting. *Id*. Lindsey examined his oatmeal and noticed small insects in his food. *Id.* He also heard other inmates complaining about insects in their oatmeal.

Major McClanahan and other officers entered the unit and began taunting the inmates. *Id.* McClanahan claimed that the insects in their breakfast were in response to inmates who had previously held the yard hostage. *Id.* at 7-8. He threatened the inmates that they could face additional consequences if they continued to interfere with prison security. *Id.* at 8. McClanahan denied Lindsey access to medical and mental health care screening after the incident.

Lindsey continued to experience stomach aches and vomiting for five days. Doc. 1, p. 8. He could not eat or move. *Id.* He filled out sick call request slips but never saw medical staff for his illness. *Id.* He complained directly to Nurse Practitioner Crane when she walked through the gallery. *Id.* He also asked for medical care. *Id.* She told him to stop whining because the bugs did not do that much damage to Lindsey. She told him to drink more water. She refused to examine him or provide him with any medical care. *Id.* at 8-9.

Following threshold review of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

> **Count 1:** **Eighth Amendment conditions of confinement claim against Major McClanahan for purposefully serving Lindsey food infested with bugs.**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against Major McClanahan for refusing to provide Lindsey with medical and/or mental health care after eating bug-infested oatmeal.**
>
> **Count 3:** **Eighth Amendment deliberate indifference claim against Nurse Practitioner Crane for refusing to evaluate or treat Lindsey after eating bug-infested oatmeal.**

Doc. 10, pp. 3-6.

On June 10, 2025, Plaintiff filed a Motion to Show Grievance Process is Inadequate and Plaintiff Exhausted Administrative Remedies (Doc. 33). Defendant McClanahan filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 34), which Defendant Crane joined. See Docs 36 and 40. Defendants argued that there is only one relevant grievance on Plaintiff's record: Grievance K4-1023-0839, dated October 12, 2023. Therein, Plaintiff grieved being served a breakfast tray with bugs in it. Doc. 34-3, pp. 4-5. He asked to talk to Mental Health, see the doctor, have lab work, and be transferred to another facility. *Id.* He noted that he would be filing a lawsuit and sought compensation. *Id.* On December 12, 2023, the Grievance Officer recommended that the grievance be denied, to which the Chief Administrative Officer ("CAO") concurred.[3] Doc. 34-3, p. 2. On December 29, 2023, Plaintiff signed the appeal box on the CAO's response. Doc. 34-3, p. 2. However, the ARB did not receive the appeal until February 9, 2024, and denied it because it was received more than 30 days after the CAO's decision. Doc. 34-3, p. 1.

Defendants raised two arguments: first, that the Plaintiff failed to receive a substantive response from the ARB on Grievance K4-1023-0839, and second, that the grievance was substantively deficient because it did not identify Defendants and the claims raised in the Complaint. Plaintiff responded, countered that he appealed the CAO's decision within the 30-day timeframe, but the Menard staff deliberately failed to process his legal mail in a timely manner. The Court set both motions for an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

---

[3] The record shows that the CAO's signature was affixed on Grievance K4-1023-0839 on December 15, 2023, but Plaintiff testified that he received a copy of the CAO's denial on December 12, 2023. Doc. 34-3, p. 2. This discrepancy, however, is immaterial to the Court's analysis.

*Pavey Hearing*

An evidentiary hearing was held on December 2, 2025. Doc. 43. Plaintiff conceded that Grievance K4-1023-0839 is the only grievance relevant to this action. Plaintiff reiterated that he received the CAO's denial of his grievance on or about December 12, 2023. On December 29, 2023, he signed the designated box on the CAO's response, indicating his intent to appeal it to the ARB, then stamped the envelope as privileged and placed it in the outgoing mailbox. He argued that Menard staff deliberately failed to process his privileged mail promptly, resulting in the ARB receiving his appeal after the 30-day window had closed.

Plaintiff further confirmed that he did not have any interaction with Defendant Crane until a couple of days after he filed Grievance K4-1023-0839. He argued, however, that Crane had already exhibited deliberate indifference to his medical needs because no one from the Health Care Unit had responded to his sick call request slips earlier. Plaintiff further testified that he did not identify Defendant McClanahan in Grievance K4-1023-0839 because the members of the tact team who entered the gallery after the inmates were served with the bug-infested trays were wearing masks.

Jeffrey Olson, Correctional Counselor at Menard at all times relevant to the Complaint, testified on Defendant McClanahan's behalf. Olson explained the grievance process in Menard. He confirmed that inmates' appeals of the CAO's decisions are sent to the ARB via privileged mail. He testified that Menard does not maintain a logging system for inmates' outgoing mail.

<u>Analysis</u>

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

Page **4** of **12**

law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[4]

### *Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on

---

[4] This case does not implicate *Perttu v. Richards*, 145 S.Ct. 1793 (2025) because Plaintiff does not argue that his attempts to exhaust his administrative remedies were hindered by Defendants' unconstitutional conduct as alleged in the Complaint.

the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the IDOC must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). An inmate who does not know the names of individuals involved in the complaint must include as much descriptive information about the individual as possible. *Id.*

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id.* §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). "The appeal must be received by the [ARB] within 30 days after the date of the decision." *Id.* The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 Ill. Admin. Code § 504.850(d) and (e).

Even though the Administrative Code requires that an inmate's appeal must "be received" by the ARB within 30 days of the CAO's decision, this District Court has found that a grievance

is timely so long as an inmate placed it in the prison's mail system within that timeframe. *See Chapman v. Wexford Health Servs.*, No. 22-CV-1942-SMY, 2025 WL 578504, at *4 (S.D. Ill. Feb. 21, 2025) (collecting relevant case law and noting that "[w]hile the administrative code does specify that an inmate's appeal must be received by the ARB within 30 days of the CAO's decision, federal courts generally apply the 'prison mailbox rule' to determine whether an inmate has met a filing deadline").

Further, the Seventh Circuit has explained that to satisfy its purpose and comply with the PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); *see also Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023) ("the grievance must raise the same claim as the lawsuit and provide enough information to indicate that the defendant is the target"). But failing to name the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Finally, inmates need only exhaust the administrative remedies available to them. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prison officials may not utilize the exhaustion process so as to unfairly prejudice inmates, and an administrative remedy will be deemed "'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004)). The Supreme Court has explained that a grievance system might become unavailable, for instance, when the administrative scheme is "so opaque that it becomes, practically speaking,

incapable of use" or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 639–40, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). It is the defendant's burden to show "beyond dispute" that the administrative remedies were available. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). Yet, the Seventh Circuit has cautioned that the unavailability "exception is meant to be narrow." *Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022).

## **Discussion**

The parties agree that there is only one relevant grievance: Grievance K4-1023-0839, dated October 12, 2023. Defendants argue that Grievance K4-1023-0839 did not exhaust Plaintiff's administrative remedies because Plaintiff did not receive a substantive response by the ARB before initiating this action and because the grievance was substantively deficient. The Court will address each argument in turn.

1. *Timeliness of Plaintiff's Appeal to the ARB*

Here, there is no dispute that the ARB received Plaintiff's grievance more than 30 days after the CAO's decision: the CAO denied Grievance K4-1023-0839 on December 12, 2023, and the ARB received it on February 9, 2024. Doc. 34-3, pp. 1-2. However, Plaintiff argued that he should be excused for the delay because he signed and mailed his appeal on December 29, 2023, but Menard staff deliberately delayed processing of his privileged mail. Plaintiff's testimony not only triggers the mailbox rule but also raises the unavailability exception in that he attributes the procedural deficiency to misconduct and machination by the prison administrators. Defendants, who carry the burden of proof, did not offer any evidence to counter Plaintiff's testimony. Further, Plaintiff's testimony is partially corroborated by the record: Plaintiff's ARB record shows that Plaintiff checked the designated box to appeal the CAO's decision on December 29, 2023, well

within the 30-day timeframe. Doc. 34-3, pp. 1-2. Accordingly, the Court finds that Plaintiff's failure to receive a substantive response by the ARB before initiating this action is excused because Defendants failed to carry their burden of showing the administrative remedies were available.

2. *Substantive Deficiency of Grievance K4-1023-0839*

Defendants also argue that Grievance K4-1023-0839 is substantively deficient to exhaust Plaintiff's administrative remedies. The Court will address this argument as it relates to each one of Plaintiff's claims.

*Count 1 against Defendant McClanahan*

In Count 1, Plaintiff raised an Eighth Amendment conditions of confinement claim against Defendant McClanahan for purposefully serving Plaintiff bug-infested food on October 12, 2023. Doc. 1, pp. 7-8; Doc. 10, pp. 3-6. Plaintiff further alleged that when inmates complained, Major McClanahan and other officers entered the unit and began taunting the inmates, telling them that insects in their breakfast were in response to inmates who had previously held the yard hostage. *Id.* at 7-8. In Grievance K4-1023-0839, Plaintiff described that he was served with the bug-infested breakfast on October 12, 2023. Doc. 34-3, pp. 4-5. He stated that the "tact team" entered the gallery thereafter and told inmates that this was in retaliation for the yard being held hostage. *Id.* He stated that he believed that "seg officers" were involved because they instructed officers to turn off the lights when they served breakfast. *Id.* He further accused the Warden of trying to punish the inmates. At the hearing, Plaintiff explained that he failed to name Defendant McClanahan because the "tact team" was wearing masks and he could not identify each member when he filed the grievance.

While Plaintiff did not identify Defendant McClanahan by name or title, the grievance contains sufficient information to serve its purpose of allowing the institution to address Plaintiff's

claim internally. This is evident from the Grievance Counselor's and Grievance Officer's responses to the grievance, which indicated that the North 2 Major, Defendant McClanahan, had been informed of the incident and that new breakfast trays were issued. Doc. 34-3, pp. 2-4. Because Plaintiff's failure to identify Defendant McClanahan by name or title "did not prevent the prison from identifying" the latter and responding to Plaintiff's conditions of confinement claim, the Court finds that Grievance K4-1023-0839 contained sufficient information to exhaust Plaintiff's claim asserted in Count 1 of the Complaint. *See Olden v. Jackson*, No. 23-1570, 2024 WL 4601042, at *4 (7th Cir. Oct. 29, 2024) (citing *Maddox*, 655 F.3d at 722, and explaining that failure to identify defendant by name in the grievance is not fatal when such failure "did not prevent the prison from identifying the defendant and responding to the prisoner's complaints").

*Count 2 against Defendant McClanahan*

Unlike with Count 1, however, the Court finds that the grievance was substantively deficient as to Plaintiff's deliberate indifference claim against Defendant McClanahan. In Count 2, Plaintiff alleged that McClanahan denied Plaintiff access to medical and mental health care screening after the incident. Doc. 1, pp. 7-8. Plaintiff continued to experience stomach aches and vomiting for five days; he filled out sick call request slips but never saw medical staff for his illness. *Id.*

Grievance K4-1023-0839 does not contain any allegations that Defendant McClanahan denied Plaintiff's requests for medical treatment. Plaintiff merely stated that he "asked to see a Med Tech" but was instructed to file a grievance. Doc. 34-3, pp. 4-5. Plaintiff, however, did not explain who denied his request. *Id.* Unlike with Count 1, the nature of Plaintiff's claim was not sufficiently linked to Major McClanahan's position to alert the institution to his involvement in it without the need for additional information. And there is nothing in the Counselor's and Grievance

Officer's responses that shows the institution became aware of Defendant McClanahan's alleged involvement in Plaintiff's denied medical and mental health treatment following the October 12, 2023. *Id.* at 3-4. Plaintiff also requested in Grievance K4-1023-0839 "to talk to Mental Health," to "see the doctor," and have "lab test done." *Id.* at 4-5. However, these are merely requests for future medical treatment — not complaints about Defendant McClanahan's prior failure to do so.

Accordingly, the Court finds that Grievance K4-1023-0839 did not contain sufficient information to exhaust Plaintiff's deliberate indifference claim against Defendant McClanahan.

*Count 3 against Defendant Crane*

In Count 3, Plaintiff alleged in the Complaint that after being served with the bug-infested oatmeal, he experienced stomach aches and vomiting for five days. Doc. 1, p. 8. He filled out sick call request slips but never saw medical staff for his illness. *Id.* He complained directly to Nurse Practitioner Crane when she walked through the gallery and asked for medical care, but she told him to stop whining because the bugs could not do that much damage. She told him to drink more water and refused to examine him or provide him with any medical care. *Id.* at 8-9. Plaintiff, however, admitted during the hearing that the complained-of interaction with Defendant Crane did not occur until a couple of days after he filed Grievance K4-1023-0839. He did not dispute that he did not file a separate grievance about Defendant Crane's alleged deliberate indifference to his medical needs. Because the only grievance Plaintiff filed regarding this case predates the allegations against Defendant Crane, it could not have served its purpose of providing the facility with an opportunity to address Plaintiff's claims against her.

Plaintiff further argued at the hearing that Defendant Crane was deliberately indifferent to him even before their interaction during her gallery tour because his previous sick call request slips had gone ignored. However, Plaintiff did not include those allegations in Grievance K4-1023-

Page **11** of **12**

0839. Rather, he merely stated that he needed "to talk to Mental Health," to "see the doctor," and have "lab test done." As stated above, these are merely requests for future medical treatment—not complaints about a prior failure to do so. Accordingly, Plaintiff failed to exhaust his administrative remedies on his deliberate indifference claim against Defendant Crane.

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Show Grievance Process is Inadequate and Plaintiff Exhausted Administrative Remedies (Doc. 33) and Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 34) are **GRANTED in part and DENIED in part**. Count 2 against Defendant McClanahan and Count 3 against Defendant Crane are **DISMISSED without prejudice**. Count 1 against Defendant McClanahan survives summary judgment on exhaustion of administrative remedies. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Crane and enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: December 5, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**